UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
NEXTGEAR CAPITAL, INC., MANHEIM                 :
REMARKETING, INC. d/b/a MANHEIM                 :
PENNSYLVANIA,                                    :        REPORT AND
                                                 :        RECOMMENDATION
                               Plaintiffs,       :
                                                 :        No. 23-CV-9458-NCM-JRC
             -against-                           :
                                                 :
TRISTATE AUTO SERVICE CENTER, INC. and          :
ZU JI GAO,                                        :
                                                 :
                               Defendants.       :
                                                 :
--------------------------------------------------------------------x
JAMES R. CHO, United States Magistrate Judge:

Plaintiffs NextGear Capital, Inc. ("NextGear") and Manheim Remarketing, Inc.

("Manheim" and collectively, "plaintiffs") bring this diversity action for, *inter alia*, breach of

contract against defendants Tristate Auto Service Center, Inc. and Zu Ji Gao ("defendants"), arising

out of defendants' failure to pay for certain motor vehicles they purchased at auction. *See* Compl.,

Dkt. 1. Currently before this Court, on referral from the Honorable Natasha C. Merle, is plaintiff

Manheim's motion for default judgment against defendants.[1] *See* Mot. for Default J., Dkt. 26. For

the reasons set forth below, this Court respectfully recommends granting Manheim's motion.

## I.    Factual Background

The following facts are drawn from the Complaint and accompanying exhibits, which are

accepted as true for purposes of this motion. *See* Dkt. 1.

Plaintiff Manheim is a Delaware corporation with its principal place of business in Georgia.

*See* Compl. ¶ 3. Manheim is the world's largest wholesale automobile marketplace, which, among

other things, operates automobile auctions that allow used car dealers to purchase vehicles. *See id.*

---

[1] Following a motion hearing held on August 1, 2024, NextGear withdrew its request for a money
judgment. *See* Status Report Requesting Entry of Judgment for Manheim at 3, Dkt. 33.

¶ 3.  Manheim operates a number of automobile auction venues, including one in Manheim, Pennsylvania.  *See id.* ¶ 24.  NextGear is a Delaware corporation with its principal place of business in Indiana.  *See id.* ¶ 2.  NextGear provides floor plan financing to used automobile dealers.  *See id.* Defendant Tristate Auto Service Center Inc. ("Tristate") is a used automobile dealer with its principal place of business located at 1769 McDonald Avenue, Brooklyn, New York.  *See id.* ¶ 4.  Defendant Zu Ji Gao ("Gao") is the President of Tristate and is domiciled in New York.  *Id.* ¶ 5.

On October 25, 2022, NextGear extended a line of credit to Tristate in order to permit Tristate to finance motor vehicles for resale to retail customers in connection with Tristate's used car dealership.  *See id.* ¶ 9.  Tristate entered into a Demand Promissory Note and Loan and Security Agreement with NextGear (the "Note") granting NextGear a security interest in "all of Borrower's assets and properties, wherever located, including, without limitation . . . all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired . . . and all additions, accessions, accessories, replacements, substitutions and proceeds of any of the foregoing."  *See id.* ¶¶ 9-10; Note ¶ 2(a), Dkt. 1-1.  The security interest was intended to "secure full and prompt payment of all Liabilities and performance of all obligations of [Tristate] to [NextGear] its Affiliates, and/or their respective successors or assigns."  Note ¶ 2; *see id.* ¶ 2(b) ("The security interest given to Lender in Section 2(a) is given . . . to secure payment of all Liabilities and the performance of all obligations of Borrower to Lender, and its Affiliates, including all obligations of Borrower under this Note, under any other Loan Document, or otherwise[.]").  Tristate acknowledged by signing the Note that Manheim is an affiliate of NextGear.  *Id.* ¶ 5(dd) ("Borrower acknowledges that Cox Automotive, Inc. (formerly Manheim, Inc.) and Manheim Remarketing, Inc., together with each of their respective direct and indirect subsidiaries and affiliated U.S. auctions (collectively "Manheim"), are

Affiliates of [NextGear]").

The parties agreed that an event of default would occur if "(a) Borrower or Guarantor fails to perform any of its obligations, undertakings or covenants under this Note . . . ; (b) Borrower or any Guarantor breaches or otherwise violates any provision of this Note . . ; [and] (e) Borrower or any Guarantor . . . has defaulted in the payment or performance of any debt or obligation under any other agreement, whether to Lender or to a third party." *Id.* ¶ 6(a), (b), (e).  Upon the occurrence of an event of default, NextGear can "[d]emand immediate payment of all Liabilities and other indebtedness and amounts owed to Lender and its Affiliates by Borrower and its Affiliates . . . [and] to take possession of and remove any Collateral." *Id.* ¶ 7(a).  Tristate further agreed that in the event of a default, it would "pay all reasonable attorneys' fees and other collection costs incurred by Lender and its Affiliates in enforcing this Note . . . after any Event of Default." *Id.* ¶ 7(d).

On October 25, 2022, NextGear filed a UCC-1 financing statement in connection with the Note. *See* Compl. ¶ 16; UCC Financing Statement, Dkt. 1-2.

On October 25, 2022, defendant Gao executed an individual guaranty of the Note, in which he "voluntarily, unconditionally, and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise . . . [of] all Liabilities; and (ii) the full and prompt performance of all the terms, covenants, conditions, and agreements related to the Liabilities." Compl. ¶¶ 18-19; Guaranty ¶ 2(a), Dkt. 1-3.  In the Guaranty, "Liabilities" are defined as "any and all Advances, debts, financial obligations, fees, charges, expenses, attorneys' fees, and costs of collection owning, arising, due, or payable from Borrower to Lender or any of its Affiliates, of any kind or nature." *Id.* ¶ 1(b).  Gao further agreed that it would qualify as an event of default if he "fails to make full payment of any amount owed hereunder" or "fails to perform or observe any agreement, covenant, terms or condition contained in this Guaranty." *Id.* ¶¶ 4(a), (b).  In the event

of default, Gao also agreed "to pay all expenses, including attorneys' fees and court costs . . . paid or incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities." *Id.* ¶ 2(a).

Between August 7, 2023 and December 15, 2023, Tristate purchased at least 24 vehicles through Manheim automobile auctions, primarily in Manheim, Pennsylvania, for which Manheim has not been paid. *See* Compl. ¶¶ 24-25; Invoices, Dkt. 1-4; *see also* Certification of Matt Easler ("Easler Cert.") ¶ 4, Dkt. 26-11. Plaintiff attached to the Complaint invoices for the purchase of the vehicles, which each provide that the buyer is Tristate and the buyer's representative is defendant Gao. *See* Invoices, Dkt. 1-4. Each invoice also provides that a late fee will be added "subject to details in the Manheim Terms and Conditions." *See id.*

Previously, on November 18, 2021, Gao, on behalf of himself and Tristate, confirmed acceptance of Manheim's Terms and Conditions by providing his electronic signature on Manheim.com in connection with using Manheim's auction location. *See* Compl. ¶ 28; Electronic Signature Report, Dkt. 1-5; *see also* Easler Cert. ¶ 8. Those Terms and Conditions provide that "Title to a Vehicle does not pass to Buyer until good funds are received. Buyer grants Manheim a security interest in each Vehicle to secure payment of the purchase price and of any other debt owed by Buyer to Manheim (including any affiliates of Manheim or Cox Automotive, Inc.)." Terms and Conditions ¶ 13(b), Dkt. 1-6; Compl. ¶ 29.[2] Further, the buyer agrees "to purchase the applicable Vehicle for the purchase price . . . shown on the final bill of sale or other final purchase receipt from us." *Id.* ¶ 13(e). The buyer also agreed that "if any electronic debit or check or draft [Manheim] presents on your back account is returned unpaid, you will pay an additional service charge of $100.00[.]" *Id.* ¶ 14.

Finally, the Terms and Conditions provide as follows:

Individual Guaranty: By entering our private facilities and/or using our services,

---

[2] The Terms and Conditions further provide that "You agree that Manheim may resell any Vehicle, if retained or repossessed on your behalf, to mitigate damages . . . ." Terms and Conditions ¶ 13(b).

> you personally guarantee full payment and performance of all obligations incurring to Manheim created by our participation with Manheim, whether personally or as a representative of another entity. . . .  Liability under this general guaranty is in addition to your dealership's liability and is joint and several with such dealership's liability.  This is a general guaranty of payment and performance and not merely a guarantee of collection.

*Id.* ¶ 16.

On December 4, 2023 and December 15, 2023, 24 vehicles at issue here were released to Tristate in exchange for electronic debit authorizations in the amount of $2,707,035 from a bank account maintained by Tristate, as reflected in the invoices attached to the Complaint.[3]  Compl. ¶¶ 32, 43; Invoices, Dkt. 1-4; Easler Cert. ¶¶ 4-5.  On December 20, 2023, Tristate's ACH payments were returned for insufficient funds.  Compl. ¶ 33; Easler Cert. ¶ 5.[4]  On the same day, Manheim made a demand for payment upon Tristate and Gao, or the return of the vehicles.  Compl. ¶¶ 37-38; Affirmation of Nicholas M. Gaunce ("Gaunce Aff.") ¶ 4, Dkt. 1-11.  Tristate has not otherwise remitted payment to Manheim, nor returned the vehicles to Manheim.  Compl. ¶¶ 34-35, 39-40; Easler Cert. ¶ 10; Gaunce Aff. ¶ 4.  Of the 24 vehicles released to defendants, plaintiffs were able to recover and resell one of the vehicles for which they credited defendants in the amount of $148,715.00.  *See* Easler Cert. ¶¶ 7, 13; Dkt. 26-16.

---

[3] There is no evidence that plaintiff made an electronic transfer for the 2021 Mercedes-Benz B C63WS, which was purchased on August 7, 2023 for $69,535.  *See* Compl. ¶ 25; Invoices, Dkt. 1-4 at ECF page 24; Dkt. 26-13 at ECF pages 24, 26-49.  In addition, the Court notes that paragraph 25 of the Complaint contains a typographical error in which a 2023 Toyota Sienna LE is listed as having been purchased on December 15, 2023, instead of a third 2023 Mercedes-Benz GLS, which is reflected in the invoices attached to the Complaint and for which plaintiff seeks damages.  *See* Invoices, Dkt. 1-4 at ECF pages 15, 19, 20; Dkt. 26-13 at ECF pages 15, 19, 20.  Finally, the Court notes than ten of the electronic transfers did not include a $400 late fee that was reflected on the invoice.

[4] Pursuant to a subpoena, plaintiffs obtained bank records showing that Tristate's account had a balance of $4,058.63 as of December 15, 2023.  *See* Supplemental Declaration of Nicholas M. Gaunce ("Supp. Gaunce Decl.") ¶ 4, Dkt. 15.  The highest balance in Tristate's account in December 2023 was $53,748.63.  *Id.*

II.    **Procedural Background**

On December 23, 2023, plaintiffs commenced this action and moved by order to show cause for an order directing the seizure of the 24 at-issue vehicles. *See* Dkts. 1, 1-12. At the time of the filing of the Complaint, according to plaintiffs, defendants owed an outstanding debt of $2,782,970.00. Compl. ¶ 58; Gaunce Aff. ¶¶ 3, 5.

On January 11, 2024, the Honorable Frederic Block granted plaintiffs' motion to take possession of the 24 subject automobiles. *See* Memorandum and Order, Dkt. 17. After plaintiffs recovered one of the vehicles and issued defendants a credit, plaintiffs determined that defendants owed $2,655,895.00. Easler Cert. ¶ 14, Dkt. 26-11.

Plaintiffs allege claims for breach of contract (First Cause of Action), breach of the guaranty (Second Cause of Action), declaratory judgment (Third Cause of Action), replevin (Fourth Cause of Action) and account stated (Fifth Cause of Action).

After service on defendants was purportedly effected, defendants failed to appear or otherwise defend the action, leading plaintiffs to seek entry of default on April 1, 2024, *see* Request for Certificate of Default, Dkts. 21, 22, which was granted on April 12, 2024, *see* Entry of Default, Dkts. 24, 25. On May 10, 2024, plaintiffs moved for default judgment, *see* Mot. for Default J., Dkt. 26, which Judge Merle referred to this Court for a report and recommendation, *see* Order dated May 13, 2024.

At motion hearings held on August 1 and 15, 2024, defendants failed to appear despite receiving notice of the hearing. *See* Minute Entry dated 8/15/2024; Minute Entry dated 8/1/2024. In connection with the instant motion, the Court directed plaintiffs to supplement their submissions to address the sufficiency of service of process on defendants and plaintiff NextGear's standing to sue. *Id.*; Minute Entry dated 8/1/2024. In response, NextGear withdrew its request for judgment. *See* Dkt. 33.

### III.    Discussion

####   A.    Liability

#####     1.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment.  The Rule sets forth a two-step process for entry of a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of the Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See id.*; *see also* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").  This first step is nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of the Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment.  *See* Fed. R. Civ. P. 55(b)(2).

Here, after defendants failed to respond to the Complaint, the Clerk of the Court entered defaults against them.  To date, defendants have not appeared or moved to vacate the entries of default.

When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Labarbera v. ASTC Lab'ys., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's

liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id.* at 95. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84. A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp.

3d 593, 606 (E.D.N.Y. 2017).

**B.      Service of Process**

Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment.  *See Chen v. Best Miyako Sushi Corp.*, No. 16-CV-2012, 2021 WL 707273, at *8 (S.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021); *Miranda v. Astoria Provisions, LLC*, No. 19-CV-2923, 2020 WL 6370058, at *3 (E.D.N.Y. July 24, 2020), *report and recommendation adopted*, 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020); *see also Mickalis Pawn Shop*, 645 F.3d at 133 ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.") (internal quotation marks, brackets, and citation omitted).  "Default judgments are disfavored, so before a district court will enter one, it must ensure that the defaulting defendants received notice of the claims against them and were provided an opportunity to answer those allegations." *Johannes Baumgartner Wirtschafts-Und Vermögensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 n.6 (E.D.N.Y. 2013) (citing *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).  Plaintiffs bear the burden of proving that service was adequate.  *See Rahman v. Red Chili Indian Café, Inc.*, No. 17-CV-5156, 2021 WL 2003111, at *2 (S.D.N.Y. May 19, 2021).

**1.      Service on Tristate Auto Service Center**

Rule 4 of the Federal Rules of Civil Procedure ("FRCP") permits service on a corporation in a manner authorized by the law of the forum state.  *See* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).  New York law provides for service of process on a corporation by personally delivering process to New York's Secretary of State.  *See* N.Y. Bus. Corp. Law § 306(b)(1).

Here, plaintiffs served Tristate by delivery to the Secretary of State.  *See* Summons Returned Executed, Dkt. 11.  According to the records of New York's Department of State, the

corporation is still listed as active and has not been dissolved. *See* https://apps.dos.ny.gov/publicInquiry/EntityListDisplay (last visited Feb. 26, 2025). Accordingly, plaintiffs properly served Tristate pursuant to New York Business Corporation Law § 306(b)(1).

### 2.    Service on Zu Ji Gao

Rule 4 of the FRCP also permits service of process on an individual in accordance with the law of the forum state. *See* Fed. R. Civ. P. 4(e)(1). New York law provides for "affix-and-mail service" in cases in which personal service "cannot be made with due diligence." N.Y. C.P.L.R. § 308(4). While the "due diligence" requirement must be "strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received," *McSorley v. Spear*, 854 N.Y.S.2d 759, 760-61 (2d Dep't 2008) (collecting cases), there is no magic number of service attempts necessary to qualify as duly diligent. *See, e.g.*, *Cnty. of Nassau v. Gallagher*, 841 N.Y.S.2d 696, 697 (2d Dep't 2007) (collecting cases). "Nonetheless, a rough standard of due diligence has emerged from the caselaw," suggesting "approximately three attempts at service, optimally on non-consecutive days." *Feaster v. NYS Dep't of Corrections*, No. 17-CV-1151, 2022 WL 220245, at *2 (W.D.N.Y. Jan. 25, 2022) (internal quotation marks and citation omitted).

Here, defendant Gao was properly served with a summons and a copy of the Complaint on February 23, 2024 by "nail-and-mail" service (Dkt. 20), after the process server, on four different days, at different times of day, diligently attempted to serve Gao at his usual place of abode (Dkts. 9, 20). *See Gardner v. Lefkowitz*, 737 F. App'x 597, 598 (2d Cir. 2018) (finding sufficient three attempts at service on non-consecutive days at different times); *Mister Softee, Inc. v. Diaz*, No. 19-CV-4857, 2020 WL 5665240, at *3 (E.D.N.Y. July 2, 2020) (finding nail and mail service proper after three attempts at personal service), *report and recommendation adopted*, 2020 WL 5658722 (E.D.N.Y. Sept. 22, 2020); *United States v. McDermott*, No. 12-CV-4440, 2014 WL 1272566, at *3 n.1 (E.D.N.Y. Feb. 14, 2014) (four attempts at service occurred on different days and at different

times), *report and recommendation adopted*, 2014 WL 917267 (E.D.N.Y. Mar. 10, 2014). In fact, on July 9, 2024, plaintiffs personally served defendant Gao at the same address, with copies of the Court's scheduling order and a full docket sheet. *See* Affidavit of Service, Dkt. 28; *see also Gardner*, 737 F. App'x at 598 (finding nail and mail service sufficient where process server had confirmed defendant's address with her neighbor). Accordingly, plaintiffs properly served defendant Gao with process.

Here, defendants did not respond to the Complaint despite proper service. Plaintiffs also filed affidavits confirming service of the motion for default judgment, this Court's Orders scheduling hearings on the motion, and the minute entries for the conferences. *See* Dkts. 26-2, 27, 28, 29, 30, 31, 32, 34, 35, 36. Defendants have nonetheless failed to respond to Manheim's motion for default judgment or otherwise appear in this action. Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability.

### C.    Breach of Contract and Breach of Guaranty

#### 1.    Choice of Law

This Court must first determine what law to apply to Manheim's claims. *See, e.g., D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 407 (E.D.N.Y. 2015). The instant case was predicated upon diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1). *See* Compl. ¶ 8. The Second Circuit has held that a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). "In a contract dispute, New York courts will generally honor a choice-of-law provision in an agreement." *Scharnikow v. Siracuse*, No. 15-CV-6991, 2016 WL 7480360, at *3 (E.D.N.Y. Dec. 6, 2016) (citation omitted), *report and recommendation adopted*, 2016 WL 7480364 (E.D.N.Y. Dec.

29, 2016).

First, the Note provides that Indiana law governs the agreement.  *See* Note ¶ 21, Dkt. 1-1 at ECF page 11.  On the other hand, Manheim's Terms and Conditions provide that Georgia law controls the parties' rights.  *See* Terms and Conditions ¶ 26, Dkt. 1-6 at ECF page 8.  In New York, however, "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws."  *See Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc.*, No. 02-CV-7666, 2005 WL 1123735, at *1 (S.D.N.Y. May 11, 2005) (citation omitted).  Courts in this Circuit have held that an actual conflict is one that could "have a significant possible effect on the outcome of the trial[,]" and that "[w]here there is no actual conflict between the potentially applicable bodies of law, the court should dispense with the choice of law analysis and apply the law of the forum [state], . . . even when a dispute is governed by a contract containing a choice of law provision."  *Id.* (citations omitted); *see also Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (court will not "embark on a choice-of-law analysis in the absence of an 'actual conflict' between the applicable rules of two relevant jurisdictions").  Because the requirements of a breach of contract claim under the laws of Indiana, Georgia and New York are substantially similar, the Court is persuaded that there is no substantive conflict of law.  S*ee Boggs v. Home Depot, Inc.*, No. 21-CV-6750, 2023 WL 1779690, at *6 (S.D.N.Y. Feb. 6, 2023) (finding "no appreciable difference between contract law in New York and in Georgia"); *Axis Ins. Co. v. Stewart*, 198 F. Supp. 3d 4, 11 (N.D.N.Y. 2016) (applying New York contract law because no actual conflict with Indiana law).  Absent such a conflict, this Court must bypass the choice-of-law analysis and apply New York law.  *See Nat'l Oil*, 2005 WL 1123735, at *2 (applying New York law to contract claim where there was no actual conflict).

In addition, where, as here, the parties do not raise choice-of-law as an issue, "it can be said that they have consented to the application of the forum state's law."  *Scharnikow*, 2016 WL

12

7480360, at *3 (quoting *Mangual v. Pleas*, No. 02-CV-8311, 2005 WL 2179083, at *2 n.1 (S.D.N.Y. Sept. 8, 2005)); *see Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362, 2012 WL 4472025, at *5 (E.D.N.Y. Sept. 25, 2012); *Chung v. Sano*, No. 10-CV-2301, 2011 WL 1303292, at *7 (E.D.N.Y. Feb. 25, 2011) (applying New York law where plaintiff "ha[d] not taken any position" and defendants defaulted), *report and recommendation adopted*, 2011 WL 1298891 (E.D.N.Y. Mar. 31, 2011).  As Manheim exclusively applies New York law and makes no choice-of-law argument, and as defendants have proffered no argument to the contrary by virtue of their default, the Court applies New York law to the claims and issues in this action.[5]  *See Pogodin v. Cryptorion Inc.*, No. 18-CV-791, 2020 U.S. Dist. LEXIS 173999, at *15 n.4 (E.D.N.Y. Sept. 17, 2020) (where parties had cited to New York law, court applies New York law in considering motion for default judgment, despite California choice-of-law provision in promissory note), *adopted*, Order (E.D.N.Y. Oct. 13, 2020); *Leser*, 2012 WL 4472025, at *5 (collecting cases) ("Because neither party has cited to anything other than New York law nor has either party addressed the issue, the court finds that the parties have consented to the application of New York law to this case, despite the Guaranties' Virginia choice-of-law provisions.").

### 2.    Substantive Law

"To state a claim for breach of contract under New York law, 'the complaint must allege:

---

[5] The Court notes that the applicable agreements also include arbitration provisions and forum selection clauses.  *See, e.g.*, Terms and Conditions ¶ 27, Dkt. 1-6 at ECF pages 8-9; Note ¶ 22, Dkt. 1-1 at ECF page 11.  However, neither the enforcement of a forum selection clause nor a provision compelling arbitration "implicate[s] the Court's subject matter jurisdiction." *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 432 F. Supp. 3d 390, 399-400 (S.D.N.Y. 2020) (citing cases); *see City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017) (holding that "an arbitration agreement alone" does not "divest[ ] the federal court[ ] of subject matter jurisdiction").  In addition, such provisions may be waived.  *See Baker & Taylor, Inc. v. AlphaCraze.Com Corp.*, 602 F.3d 486, 490 (2d Cir. 2010).  Since defendants chose to default here, they have waived their right to insist upon arbitration or a particular forum.  *See Master Grp. Glob. Co., Ltd. v. Toner.Com Inc.*, No. 19-CV-6648, 2020 WL 5260581, at *5 (E.D.N.Y. Aug. 10, 2020), *report and recommendation adopted*, 2020 WL 5259057 (E.D.N.Y. Sept. 3, 2020).

[1] the formation of a contract between the parties; [2] performance by the plaintiff; [3] failure of defendant to perform; and [4] damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

Here, the well-pleaded allegations in the Complaint, accepted as true, establish Tristate's liability for breach of contract. As to the first element – the existence of a contract – the Complaint alleges, and the invoices and Terms and Conditions proffered by plaintiffs reflect, that the parties entered into an agreement under which Manheim agreed to supply various vehicles which defendants purchased at auction at agreed-upon prices. Second, Manheim performed its obligations by providing at least 24 vehicles through the Manheim automobile auction, but defendants failed to pay Manheim the agreed compensation. The Court, therefore, concludes that Manheim has properly alleged a breach of contract claim based on Tristate's failure to pay Manheim the amounts due for the vehicles sold to them.

With respect to breach of the guaranty, under New York law, Manheim must allege "(1) an underlying obligation, (2) a guarant[y], and (3) failure by the guarantor to make payment in accordance with the terms of the guarant[y]." *Bank of Am., N.A. v. Vanderbilt Trading USA LLC*, No. 17-CV-7167, 2019 WL 8807747, at *8 (E.D.N.Y. Sept. 9, 2019) (citation omitted) (alterations added by court in *Vanderbilt Trading*). "A guaranty is a collateral promise to answer for the payment of a debt or obligation of another, in the event the first person [or entity] liable to pay or perform the obligation fails." *Id.* (citation omitted). Here, Manheim alleges that Gao agreed to the Terms and Conditions, which provide that Gao, as Tristate's principal, personally guarantees the payment of amounts that are owed by Tristate to Manheim. In addition, under Gao's signed guaranty of the Note, Gao had an obligation to unconditionally pay all indebtedness of Tristate in connection with any default on Tristate's obligations to a NextGear affiliate -- Manheim. Guaranty ¶ 1(b), Dkt. 1-3. Further, Tristate defaulted, but Gao did not remit the requisite payments.

Manheim has adequately alleged breach of guaranty and, thus, the Court may properly assess the damages incurred.

Courts applying New York law have held that a plaintiff that prevails on its common law breach of contract claim cannot, in connection with the same allegations of failure to pay money owed, be found liable on claims for "account stated." *See, e.g., Arch Specialty Ins. Co. v. Kajavi Corp.*, No. 18-CV-4043, 2019 WL 3719461, at *3 (E.D.N.Y. July 11, 2019) ("Plaintiff's claim for account stated, however, fails [because] [a] defendant cannot be found liable on both an account stated claim . . . and a breach of contract claim . . . in connection with the same allegations of a failure to pay monies owed.") (citations and internal quotation marks omitted), *report and recommendation adopted*, 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019); *see also Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) (holding that a plaintiff seeking compensation for the same injury under different legal theories is entitled to only one recovery) (citing *Wickham Contracting Co. v. Bd. of Educ.*, 715 F.2d 21, 28 (2d Cir. 1983)); *J. Kings Food Serv. Prof'ls. Inc. v. Navin Bros. Food Serv.*, No. 17-CV-5472, 2018 WL 4443130, at *3 n.3 (E.D.N.Y. Aug. 15, 2018), *report and recommendation adopted*, 2018 WL 4409837 (E.D.N.Y. Sept. 13, 2018). Nonetheless, if this Court were to reach the question, it would find that plaintiffs' allegations also establish liability on the Fifth Cause of Action alleged in the Complaint.

### D.    Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring*

*Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *3 (E.D.N.Y. Feb. 12, 2020) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

Having found that the Complaint establishes defendants' liability for breach of contract and breach of guaranty, the Court now addresses the damages Manheim is entitled to recover for those claims.  Under New York law, it is well settled that "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms."  *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007) (citation omitted); *see LG Capital Funding, LLC v. Wowio, Inc.*, No. 16-CV-6632, 2018 WL 3202077, at *10 (E.D.N.Y. Apr. 24, 2018), *report and recommendation adopted*, 2018 WL 2224991 (E.D.N.Y. May 15, 2018).

In this case, Manheim seeks a principal damage award of $2,655,895.00 based on the amounts owed by defendants for those vehicles purchased at Manheim's auction ($2,802,110.00), plus $2,500 in reversal fees for insufficient funds, minus a credit of $148,715 for the vehicle that plaintiffs recovered.  *See* Easler Cert. ¶ 14.  To substantiate its claim, Manheim has provided invoices and accounting records listing the vehicles that were sold to defendants, but for which defendants failed to remit payment.  These records include the vehicle identification number, year/make/model, and agreed upon price for each vehicle that remains outstanding.

However, based on this Court' review, the invoices provided do not total the amount sought by Manheim in its accounting summary.  *Compare* Dkt. 26-12 *with* Dkt. 26-13.  Rather, based on the invoices submitted, the sum total of the principal balance owed for these 24 vehicles, equals

$2,780,570.[6]  *See* Appendix A attached hereto; Dkt. 26-13.  Applying the $148,715 credit for the vehicle that Manheim  recovered, results in a remaining principal balance of $2,631,855.

In addition, Manheim seeks $2,500 for the $100 fee charged for each electronic debit that was returned, pursuant to the Terms and Conditions.  However, the invoices submitted total $2,300 for refused payments in connection with the 24 vehicles at issue.  *See* 26-13 at ECF pages 26-49.[7]  Thus, Manheim has demonstrated to a reasonable certainty that the outstanding balance due totals **$2,634,155**.[8]

### E.    Interest

Manheim also seeks pre-judgment interest on the amount of the awarded damages.  *See* Proposed J., Dkt. 26-1; Pl. Mem. at 9-10, Dkt. 26-17.

In diversity cases, New York law governs the award of pre-judgment interest.  *See* *Terwilliger v. Terwilliger*, 206 F.3d 240, 249 (2d Cir. 2000).  In New York, plaintiffs seeking monetary damages for breach of contract are entitled to pre-judgment interest as a matter of right.  *See Matsumura v. Benihana Nat'l Corp.*, 465 F. App'x 23, 30 (2d Cir. 2012) (citing N.Y. C.P.L.R. § 5001(a)).  The statutory rate for pre-judgment interest is 9 percent per annum calculated on a

---

[6] The discrepancy between the $2,802,110.00 sought by Manheim for the sale of the vehicles and the Court's calculation of $2,780,570 is due to several factors.  First, Manheim included in its calculation a vehicle that was not the subject of the Complaint and for which it has not submitted an invoice – a 2021 BMW X7 with VIN number 5UXCW2C07M9E52758 and a sale price of $53,510.00.  *See* Summary, Dkt. 26-12 at ECF page 4; *see also* Compl. ¶ 25; Invoices, Dkt. 1-4.  Second, plaintiff's summary shows the balance remaining on a 2023 GMC Yuk AT4 as $37,860, as opposed to the original invoiced amount of $71,030 (which also includes a $400 late fee).  *Compare* Dkt. 26-12 at ECF page 2 *with* Dkt. 26-13 at ECF page 8.  Since there is no evidence of any payment having been made that would lower the outstanding balance, the Court recommends awarding the higher invoiced amount.  Finally, plaintiff included two late charges of $400 each that are not reflected in the corresponding invoices submitted.  *Compare* Dkt. 26-12 at ECF page 2 *with* Dkt. 26-13 at ECF pages 10, 12.

[7] The Court does not include a $100 fee for the 2021 BMW X7 since that vehicle was not included in the Complaint.  *See* Dkt. 26-13 at page 31.

[8] The Court calculates the principal amount owed based on the following:  $2,780,570 (invoiced sales amount) + $2,300 (reversal fees for insufficient funds) - $148,715 (credit) = $2,634,155.

simple interest basis.  N.Y. C.P.L.R. § 5004.  Damages incurred when the cause of action accrued "shall be computed from the earliest ascertainable date the cause of action existed."  *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (quoting N.Y. C.P.L.R. 5001(b)).

Here, Manheim seeks pre-judgment interest from the date of the contract breach or when Tristate's payment was rejected (*i.e.*, December 20, 2023).  The Court finds that December 20, 2023, the date Tristate defaulted on its payment obligations, is reasonable as the accrual date for the breach of contract and breach of Gao's guaranty.  *See Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (breach of contract); *Tacon v. Cromwell*, No. 23-CV-8100, 2024 WL 4275625, at *8 (S.D.N.Y. Sept. 24, 2024) (breach of guaranty).  Thus, the Court recommends awarding pre-judgment interest on the principal amount of $2,634,155 at a rate of 9 percent per annum from December 20, 2023 or **$649.52** per day (($2,634,155 x .09) / 365), through the date of entry of judgment.

### F.    Attorneys' Fees and Costs

Manheim requests $26,912.50 in attorneys' fees and $4,165.36 in costs, for a total of $31,077.86, pursuant to the terms of Gao's guaranty and the Terms and Conditions.  *See* Gaunce Cert. ¶¶ 15-18, Dkt. 26-3; Prop. J., Dkt. 26-1; Guaranty ¶ 2(a); Terms and Conditions ¶ 29.

"In a diversity case, the question of whether to award attorneys' fees is governed by state law."  *Precise Leads, Inc. v. Nat'l Brokers of Am., Inc.*, No. 18-CV-8661, 2020 WL 736918, at *6 (S.D.N.Y. Jan. 21, 2020), *report and recommendation adopted as modified*, 2020 WL 729764 (S.D.N.Y. Feb. 13, 2020).  "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."[9] *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,

---

[9] There is no actual conflict regarding contractual fee shifting provisions between New York, Indiana or Georgia law.  *See Benchmark Builders, Inc. v. Schultz*, 726 S.E.2d 556 (Ga. Ct. App. 2012), *aff'd*, 751 S.E.2d 45 (Ga. 2013) ("a party's entitlement to attorney fees under a contractual

537 F.3d 168, 175 (2d Cir. 2008).  If the contract so provides, the "court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987). "[A]ttorneys' fees must be 'documented by contemporaneously created time records that specify, for each [timekeeper], the date, the hours expended, and the nature of the work done." *Cnty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs., L.P.*, 636 F. Supp. 2d 159, 179 (N.D.N.Y. 2009) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)), *aff'd*, 391 F. App'x 3 (2d Cir. 2010).  Here, Gao's guaranty and the Terms and Conditions contain specific provisions that permit plaintiffs to recover attorneys' fees and other legal expenses from defendants.  *See* Guaranty ¶ 2(a); Terms and Conditions ¶ 29.

Where, as here, an award of fees is authorized by contract, "the Court must [nevertheless] assess whether the fees claimed are reasonable." *56 Willoughby A LLC v. Zhang*, No. 20-CV-3973, 2021 WL 3622084, at *9 (E.D.N.Y. July 27, 2021) (citation omitted), *report and recommendation adopted*, 2021 WL 3617671 (E.D.N.Y. Aug. 16, 2021).  "[T]he Supreme Court and Second Circuit have held that 'the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a presumptively reasonable fee.'" *Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401, 2020 WL 7239678, at *1 (S.D.N.Y. Dec. 9, 2020) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011)).  This presumptively reasonable fee or lodestar is essentially "'what a reasonable, paying client would be willing to pay,' given that such party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. NYC Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  In particular, when

---

provision is determined by the usual rules of contract interpretation"); *Walton v. Claybridge Homeowners Ass'n, Inc.*, 825 N.E.2d 818, 825 (Ind. Ct. App. 2005 ) ("in general, fee-shifting provisions will be upheld").

assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district where the reviewing court sits. *See Simmons*, 575 F.3d at 174-75; *Arbor Hill*, 522 F.3d at 191. Other factors include the labor and skill required, the difficulty of the issues, the attorney's customary rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 191. District courts have broad discretion in determining the reasonableness of an attorney's requested fees. *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). This standard applies not only to cases involving statutory fee-shifting, but also to those in which fees are authorized by contract. *See, e.g., 56 Willoughby A LLC*, 2021 WL 3622084, at *9 (employing *Arbor Hill* analysis); *RJ Kitchen Assocs. Inc. v. Skalski*, No. 16-CV-1436, 2019 WL 2436092, at *7 (E.D.N.Y. Feb. 25, 2019) (same).

Manheim has submitted time records on behalf of both its counsel in support of its fee application: Nicholas M. Gaunce and Anthony Bush. *See* Dkt. 26-10 at ECF pages 3-27. Mr. Gaunce has been licensed to practice law since 2007, and Mr. Bush since 1990, and both have extensive experience litigating creditors' rights and bankruptcy matters on behalf of banks and other lenders. *See* Gaunce Cert. ¶¶ 9-10, 12-13. For their work on this case, Mr. Bush billed at rates of $335 and $360 per hour and Mr. Gaunce charged $290 and $325 per hour. *See id.* The requested hourly rates are well within the typical range for attorneys with similar credentials and experience. *See, e.g., Hernandez v. Quality Blacktop Servs., Inc.*, No. 18-CV-4862, 2021 WL 1207316, at *11 (E.D.N.Y. Mar. 30, 2021) (awarding $350 per hour for an attorney with over 20 years' experience in a case that involved a breach-of-contract claim); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO v. Intercounty Paving Assocs. of NY, LLC*, No. 19-CV-733, 2020 WL

6826197, at *8 (E.D.N.Y. Nov. 20, 2020) (finding $390 per hour reasonable for a law firm partner with over 20 years' experience in a dispute that included a claim for breach of a collective bargaining agreement). This Court recommends awarding fees for Mr. Bush at the rates of $335 and $360 per hour and for Mr. Gaunce at the rates of $290 and $325 per hour.

Next, this Court must determine that the hours billed were also reasonable. Courts award fees only for hours that are "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 430, 433 (1983). "When considering an application for attorneys' fees, the Court should exclude 'excessive, redundant, or otherwise unnecessary' hours." *Dominic Schindler Holding, AG v. Moore*, No. 20-CV-4407, 2022 WL 987428, at *9 (E.D.N.Y. Jan. 12, 2022) (quoting *Hensley*, 461 U.S. at 434). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application[.]'" *Kirsch*, 148 F.3d at 173 (citation omitted); *see Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022); *Ortiz v. City of N.Y.*, 843 F. App'x 355, 360 (2d Cir. 2021); *Rosen v. LJ Ross Assocs., Inc.*, No. 19-CV-5516, 2022 WL 493728, at *6 (E.D.N.Y. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 493274 (E.D.N.Y. Feb. 17, 2022).

Here, Manheim seeks attorneys' fees for 85.7 hours of work performed by its counsel. Manheim's counsel has submitted time records setting forth each timekeeper's name, as well as the dates, descriptions, and number of hours of work performed.[10] The hours set forth in these contemporaneous time records are largely reasonable. However, a modest percentage reduction is appropriate given the inefficient use of counsel's time. "[W]here counsel seeks compensation for time spent completing administrative tasks or work that should have been accomplished by a less-

---

[10] In addition to the invoices submitted, plaintiff provided a summary of time billed between April 1, 2024 and April 13, 2024 for a total of $1,574.00, but plaintiff failed to identify the timekeepers. *See* Dkt. 26-10 at ECF page 3. Based on the hourly rates reflected in the summary, the Court infers that those entries pertain to Mr. Gaunce and Mr. Bush. In addition, the Court notes that the total of $1,574.00 is not included in the chart of fees and costs submitted. *See* Dkt. 26-10 at ECF page 2.

skilled practitioner, '[u]niform percentage cutbacks are warranted.'" *Kizer v. Abercrombie & Fitch Co.*, No. 12-CV-5387, 2017 WL 9512408, at *4 (E.D.N.Y. July 24, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017).  An across-the-board reduction is especially appropriate where "[a] review of the time sheets confirms that many entries describe clerical tasks that are not appropriately billed" at a partner's rates, including "obviously clerical tasks, as well as entries that blend clerical tasks with legal tasks."  *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019).

Here, counsel's billing records contain several entries that reflect time spent on administrative work.  *See Tenecora v. Ba-Kal Rest. Corp.*, No. 18-CV-7311, 2020 WL 8771256, at *31-*32 (E.D.N.Y. Nov. 30, 2020) (applying percentage reduction to account "for time spent on administrative or non-compensable work, including clerical tasks, such as electronic filing, scanning, organizing files, communicating with process servers, and printing documents"), *report and recommendation adopted in part*, 2021 WL 424364 (E.D.N.Y. Feb. 8, 2021); *see also Cruz v. JJ's Asian Fusion Inc.*, No. 20-CV-5120, 2022 WL 687097, at *11 (E.D.N.Y. Jan. 11, 2022) (reducing hours for partner by 50 percent where partner billed for reviewing court notices, filed affidavits, filed notices, and performed other ministerial tasks), *report and recommendation adopted*, 2022 WL 577954 (E.D.N.Y. Feb. 25, 2022).

For example, there are multiple instances of attorneys billing time to finalize documents or to confirm all affidavits of service had been filed.  *See* Dkt. 26-10 at ECF page 7 ("Review Court Notice Re: Case Assignment"; 0.1 hours); *id.* ("Prepare Revised Civil Cover Sheet In Compliance With Local Rules"; 0.3 hours); *id.* at ECF page 8 ("Work On And Finalize Process Of Service Packages For Defendants And Non-Party, Small Business Administration"; 0.8 hours); *id.* at ECF page 14 ("Review Notices from Court Re Affidavits of Service for Secretary of State"; 0.2 hours); *id.* ("Review Secretary of State Affidavits of Service"; 0.2 hours); *id.* at 21 ("Followup with

reservice of subpoena on Momentum Real Estate"; 0.2 hours); *id.* at ECF page 22 ("Receipt and review confirmation that service complete on Gao"; 0.1 hours); *id.* ("Exchange of correspondence with process server re posting and motor vehicle search"; 0.2 hours). In the January 26, 2024 invoice alone, counsel billed at least 1.6 hours for communicating with their process server. *See* Dkt. 26-10 at ECF page 8. These are administrative tasks that could have been completed by legal support staff. *See Tenecora*, 2020 WL 8771256, at *31-*32 (applying across-the-board reduction of 10 percent).

In addition, Mr. Gaunce billed 5.4 hours at his regular hourly rate for his roundtrip travel time and attendance at the preliminary injunction hearing. *See* Dkt. 26-10 at ECF page 15. Courts in this Circuit typically permit attorneys to recover travel time at "only 50 percent of the attorney's otherwise approved rate." *Ge Chun Wen v. Hair Party 24 Hours Inc.*, No. 15-CV-10186, 2021 WL 3375615, at *23 (S.D.N.Y. May 17, 2021), *report and recommendation adopted sub nom. Wen v. Hair Party 24 Hours Inc.*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021); *see Caltenco v. G.H. Food Inc.*, No. 16-CV-1705, 2021 WL 4481205, at *11 (E.D.N.Y. Sept. 30, 2021) (awarding half-rate for travel time), *aff'd*, 2024 WL 1338784 (2d Cir. Mar. 29, 2024). Since counsel used "block billing" to document his attendance at the conference, it is "difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." *Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) (citation omitted).

For the reasons discussed above, the Court respectfully recommends applying a 5 percent across the board reduction to the hours billed. Accordingly, based on the hourly rates recommended above, the hours billed on this matter, and the recommended 5 percent across-the-board fee reduction, the Court respectfully recommends awarding Manheim **$25,566.88** ($26,912.50 x 0.95) in attorneys' fees.

In addition to attorneys' fees, Manheim seeks to recover $4,165.36 in costs. Dkt. 26-10 at

ECF page 2.  As the Court noted above, the guaranty and Terms and Conditions permit Manheim to recover costs incurred in connection with this matter.  In addition, as a prevailing party, Manheim is also entitled to recovery of costs approved by the Clerk of the Court.  *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party").

After review of the documentation submitted, this Court recommends denying reimbursement for costs attributable to "secretarial overtime" in the amount of $306.25.[11]  *See* Dkt. 26-10 at ECF pages 18, 23, 26.  Rather, such expenses are properly considered office overhead. *See Putnam Leasing Co., Inc. v. Fields*, No. 05-CV-141, 2007 WL 2230160, at *6 (E.D.N.Y. June 27, 2007) (denying plaintiff's request for "secretary overtime" costs); *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *8 (E.D.N.Y. June 13, 2005) (denying costs for travel meals and secretarial overtime); *Williams v. New York City Hous. Auth.*, 975 F. Supp. 317, 324 (S.D.N.Y. 1997) (secretarial "services are part of overhead expenses and are not generally charged to clients").

However, the remaining costs requested, including the court's filing fee, service of process fees, travel fees and "skip trace" fees, are properly recoverable.  *See Freedom Mortg. Corp. v. Trejo*, No. 22-CV-7116, 2024 WL 3465241, at *16 (E.D.N.Y. July 19, 2024) (awarding filing fees, service of process fees, and skip traces); *Freedom Mortgage Corp. v. McLain,* No. 23-CV-1309, 2023 WL 8473948, *8 (E.D.N.Y. Oct. 12, 2023) (same), *report and recommendation adopted*, 2023 WL 7320257 (E.D.N.Y. Nov. 7, 2023).  Therefore, this Court recommends awarding Manheim **$3,859.11** ($4,165.36 - $306.25) in costs.

---

[11] The amount of "hard costs" reflected in plaintiff's chart (Dkt. 26-10 at ECF page 2) does not include $306.25 in secretarial overtime.

**Conclusion**

For the foregoing reasons, the Court respectfully recommends granting the motion for default judgment filed on behalf of plaintiff Manheim Remarketing, Inc. against defendants Tristate Auto Service Center, Inc. and Zu Ji Gao, jointly and severally, and awarding plaintiff Manheim **$2,634,155** on its breach of contract claim. The Court further recommends awarding pre-judgment interest from December 20, 2023 at the rate of **$649.52 per day**, through the date of entry of judgment. The Court also recommends awarding Manheim **$25,566.88** in attorneys' fees and **$3,859.11** in costs.

Any objections to the recommendations made in this Report must be filed with the Honorable Natasha C. Merle within 14 days after the filing of this Report and Recommendation and, in any event, on or before March 13, 2025. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiffs' counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail on defendants and to file proof of service on ECF by March 3, 2025.

**SO ORDERED**

Dated: Brooklyn, New York
        February 27, 2025

s/ James R. Cho
James R. Cho
United States Magistrate Judge